Martin J. Peck, #16273
Security State Bank Building
107 E. Harvey, Second Floor
P.O. Box 421
Wellington, KS 67152
(620) 326-5997
Fax (620) 326-6887
peck@martinjpeck.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS
Sitting at Wichita

| | |
|---|---|
| JAMIE RYAN<br>                 *Plaintiff*<br>v.<br>CONSUMER LAW ASSOCIATES, LLC<br>and EFA PROCESSING, L.P.<br>                 *Defendant* | Case No. 10-CV-1195-CM-DWB |

## COMPLAINT

COMES NOW the plaintiff, Jamie Ryan, by and through her attorney, Martin J. Peck, and for her cause of action against the defendants states as follows:

### The Parties

1. Jamie Ryan ("Ms. Ryan") is a natural person who resides in Sumner County, Kansas.

2. Consumer Law Associates, LLC ("Consumer Law Associates") is a limited liability company with a principal address of 29 W. Susquehanna Ave., Ste. 400, Towson, MD 21204. Consumer Law Associates may be served with process through its resident agent, Neil J. Ruther, 29 W. Susquehanna Ave., Ste. 400, Towson, MD 21204.

3. EFA Processing, L.P. ("EFA Processing") is a Texas limited partnership with a principal address of 7668 Warren Parkway, Suite 325, Frisco, TX 75034. EFA Processing may be served with process through its registered agent, C T Corporation System, 350 N. St. Paul St., Ste 2900, Dallas, TX 75201-4234.

United States District Court, District of Kansas
COMPLAINT
*Jamie Ryan v. Consumer Law Associates, LLC,* et al.
Case No. 10-CV-____-___-___

## Jurisdiction and Venue

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

5. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a)(2).

## Factual Allegations Common to All Counts

6. "Debt adjustment"—which is variously known as "debt management," "credit counseling," "prorating," "debt consolidation," "budget planning," and "debt pooling"—is regulated in nearly every state.

7. In at least thirty-four states, debt adjustment contrary to state law is criminalized; in at least seven states, as a felony. The following states have criminal penalties associated with debt adjustment:

> a. Arizona, *see* ARIZ. REV. STAT. § 6-133 (2010) (criminalizing, as a felony, violations of ARIZ. REV. STAT. §§ 6-703 & 6-715 (2010) (prohibiting unlicensed debt management), with "each day of violation [constituting] a separate offense");
>
> b. Arkansas, *see* ARK. CODE ANN. § 5-63-302 (2010) (criminally prohibiting debt adjusting subject to exclusions contained in ARK. CODE ANN. § 5-63-305 (2010));
>
> c. California, *see* CAL. FIN. CODE § 12102 (2009) (criminalizing operating as a prorater without a license as prohibited by CAL. FIN. CODE § 12200 subject to exclusions in CAL. FIN. CODE § 12100);
>
> d. Connecticut, *see* CONN. GEN. STAT. § 36a-665 (2010) (criminalizing debt adjustment except for licensed non-profits pursuant to CONN. GEN. STAT. § 36a-656 (2010) and subject to exceptions contained in CONN. GEN. STAT. § 36a-663 (2008));
>
> e. Delaware, *see* DEL. CODE ANN. tit. 11, § 910 (2009) (criminalizing debt adjustment except as permitted by licensees regulated by DEL. CODE ANN. §§ 2401A - 2439A (2009));
>
> f. Florida, *see* FLA. STAT. § 817.806 (2010) (criminalizing, as a felony, violations of laws regulating debt management contained in FLA. STAT. §§ 817.801 to .806 (2010));

Case 6:10-cv-01195-CM-KGG   Document 1   Filed 06/15/10   Page 3 of 13

United States District Court, District of Kansas
COMPLAINT
*Jamie Ryan v. Consumer Law Associates, LLC,* et al.
Case No. 10-CV-____-___-___

    g.    Georgia, *see* GA. CODE ANN. §§ 18-5-1 to 18-5-4 (regulating the business of debt adjustment); GA. CODE ANN. § 18-5-4(a) (2010) (criminalizing debt adjusting except as permitted by Chapter 5 of Title 18 of the Georgia Code).

    h.    Hawaii, *see* HAW. REV. STAT. § 446-2 (2010) (criminalizing debt adjustment except as specifically permitted by HAW. REV. STAT. § 446-3 (2010));

    i.    Illinois, *see* 205 ILL. COMP. STAT. ANN. 665/16 (LexisNexis 2010) (criminalizing, as a felony, debt management without a license);

    j.    Indiana, *see* IND. CODE ANN. § 28-1-29-13 (LexisNexis 2010) (criminalizing debt management without a license);

    k.    Iowa, *see* IOWA CODE § 533A.13 (2010) (criminalizing debt management without a license);

    l.    Kansas, *see* K.S.A. 21-4402 (criminalizing debt adjustment except by Kansas licensed attorneys and those registered pursuant to the Kansas Credit Services Organization Act).

    m.    Kentucky, *see* KY. REV. STAT. ANN. § 380.990 (2010) (criminalizing debt adjustment except as specifically permitted by KY. REV. STAT. ANN. § 380.030 (2010));

    n.    Louisiana, *see* LA. REV. STAT. ANN. § 14:331 (2009) (criminalizing debt adjustment for profit);

    o.    Maryland, *see* MD. CODE ANN., FIN. INST. § 12-929 (2009) (criminalizing, as a felony, violations of the Maryland Debt Management Services Act, MD. CODE ANN., FIN. INST. §§ 12-901 to -931 (2009));

    p.    Michigan, *see* MICH. COMP. LAWS § 451.434 (2009) (criminalizing, as a felony, violations of the Michigan Debt Management Act, MICH. COMP. LAWS §§ 451.411 to .437 (2009));

    q.    Missouri, *see* MO. REV. STAT. § 425.020 (2009) (criminalizing debt management except for "reasonable compensation" as defined by MO. REV. STAT. § 425.010(4) as being no more than $50 as an initial fee plus $35 per month);

    r.    Nebraska, *see* NEB. REV. STAT. ANN. § 69-1215 (LexisNexis 2009) (criminalizing unlicensed debt management);

    s.    Nevada, *see* NEV. REV. STAT. ANN. § 676.320 (LexisNexis 2009) (criminalizing unlicensed debt management)

(repealed by 2009 Nev. Stat. 376 § 65 (enacting Uniform Debt-Management Services Act) *but see* 2009 Nev. Stat. 376 § 66 ("Transactions entered into before July 1, 2010, and the rights, duties and interests resulting from them may be completed, terminated or enforced as required or permitted by a law amended, repealed or modified by this act as though the amendment, repeal or modification had not occurred."));

  t. New Hampshire, *see* N.H. REV. STAT. ANN. § 399-D:24 (LexisNexis 2009) (criminalizing, as a felony for entities, unlicensed debt adjustment and establishing civil penalties and remedies);

  u. New Mexico, *see* N.M. STAT. ANN. § 56-2-2 (2008) (criminalizing debt adjustment, except for persons excepted by N.M. STAT. ANN. § 56-2-4 (2008));

  v. New York, *see* N.Y. GEN. BUS. § 457 (2009) (criminalizing debt management (called "budget planning" by N.Y. GEN. BUS. LAW § 455(1) (2009)) without a license as required by N.Y. BANKING LAW § 579 (2009));

  w. North Carolina, *see* N.C. GEN. STAT. § 14-424 (2009) (criminalizing debt adjustment except by persons specifically permitted by N.C. GEN. STAT. § 14-426 (2009));

  x. North Dakota, *see* N.D. Cent. Code 13-06-02 (2009) (criminalizing debt adjustment unless exempted under N.D. Cent. Code, § 13-06-03 (2009) which permits debt adjustment by, among others, "lawful practice of law in [North Dakota]" and "nonprofit or charitable corporations" but not for profit debt adjusters);

  y. Ohio, *see* OHIO REV. CODE ANN. § 4710.99 (2009) (criminalizing debt adjustment not performed in conformance with OHIO REV. CODE ANN. § 4710.02 (2009));

  z. Oregon, *see* OR. REV. STAT. § 697.990(3) (2007) (criminalizing failure to register to operate as a debt consolidating agency as required by OR. REV. STAT. § 697.612 (2007));

  aa. Pennsylvania, *see* 18 PA. CONS. STAT. § 7312 (2008) (criminalizing debt pooling except that conducted by Pennsylvania attorneys, certain uncompensated public welfare agencies, and non-profits);

  ab. South Carolina, *see* S.C. CODE ANN. § 37-7-117 (2008) (criminalizing debt adjustment, among other things, without being licensed as required by S.C. CODE ANN. § 37-7-102 (2008));

Case 6:10-cv-01195-CM-KGG   Document 1   Filed 06/15/10   Page 5 of 13

United States District Court, District of Kansas
COMPLAINT
*Jamie Ryan v. Consumer Law Associates, LLC,* et al.
Case No. 10-CV-____-___-___

    ac. South Dakota, *see* S.D. CODIFIED LAWS § 37-34-2 (2009) (criminalizing debt adjustment except as permitted by S.D. Codified Laws § 37-34-3 (2009), which includes, among others, attorneys and those posting a bond with the attorney general);

    ad. Tennessee, *see* TENN. CODE ANN. § 47-18-104(a) & (b) (2009) (criminalizing engaging in the business of debt adjusting without complying with the provisions of TENN. CODE ANN. § 47-18-104(b)(39) (2009), which imposes multiple requirements including maximum compensation);

    ae. Vermont, *see* VT. STAT. ANN. tit. 8, § 4874 (2009) (criminalizing, as a felony—"[violators] shall be imprisoned not more than two years or fined not more than $ 1,500.00, or both"—debt adjustment without obtaining a license as required by VT. STAT. ANN. tit. 8, § 4862 (2009));

    af. Washington, *see* WASH. REV. CODE ANN. § 18.28.190 (LexisNexis 2009) (criminalizing debt adjusting in violation of the provisions of Wash. Rev. Code Ann. § 18.28.010 to .910 (LexisNexis 2009));

    ag. West Virginia, *see* W. VA. CODE ANN. § 61-10-23 (LexisNexis 2008) (criminalizing debt pooling except for limited exceptions); and

    ah. Wyoming, *see* WYO. STAT. ANN. § 33-14-103 (2008) (criminalizing debt adjustment in violation of WYO. STAT. ANN. § 33-14-102 (2008), which prohibits debt adjustment with the exception of that "incurred in the practice of law in this state").

  8. In at least twelve states, debt adjustment is subject to regulation by civil and administrative enforcement. The following states have civil and administrative penalties associated with debt adjustment.

    a. Colorado, *see* COLO. REV. STAT. §§ 12.14.5-201 to -242 (Uniform Debt-Management Services Act);

    b. Idaho, *see* IDAHO CODE ANN. § 26-2223(7) (2010) (requiring licensure for debt adjustment);

    c. Maine, *see* ME. REV. STAT. tit. 32, § 6181 (2008) (prohibiting debt management without a license) (Technically, the license is called a "registration," but a "registration may not be issued unless the administrator, upon investigation, finds that the financial soundness and responsibility, insurance coverage, consumer education programs and services component, character and fitness

of the applicant and, when applicable, its partners, officers or directors, warrant belief that the business will be operated honestly and fairly within the purposes of this chapter." ME. REV. STAT. tit. 32, § 6173(2) (2008));

  d. Massachusetts, *see* MASS. GEN. LAWS ch. 180, 4A (limiting provision credit counseling services, including debt adjustment, to attorneys and nonprofit charitable corporations);

  e. Minnesota, *see* MINN. STAT. § 332A.03 (2008) (prohibiting unregistered debt management);

  f. Mississippi, *see*, MISS. CODE ANN. § 81-22-5 (2008) (prohibiting unlicensed debt management);

  g. Montana, *see* MONT. CODE ANNO. § 30-14-2004 (2007) (prohibiting unlicensed debt management services);

  h. New Jersey, *see* N.J. STAT. ANN. § 17:16G-6 (2009) (prohibiting unlicensed debt counseling and limiting licensees to "nonprofit social service" agencies and "nonprofit consumer credit counseling" agencies);

  i. Rhode Island, *see* R.I. GEN. LAWS § 19-14.8-4 (2009) (prohibiting debt management without registration);

  j. Texas, *see* TEX. FINANCE CODE § 394.204 (2009) (prohibiting engaging in a debt management service without registration);

  k. Utah, *see* UTAH CODE ANN. § 13-42-104 (2008) (prohibiting debt management without registration); and

  l. Virginia, *see* VA. CODE ANN. § 6.1-363.3 (2009) (prohibiting debt management without licensure).

9. Kansas requires that all debt adjusters register with the Office of the State Banking Commissioner. A listing of debt adjusters so registered as of April 2, 2010, is attached hereto as Plaintiff's Exhibit 1.

10. On November 11, 2009, while in Sumner County, Kansas, Ms. Ryan was researching debt consolidation and management, reviewing several web sites including that of www.creditjusticeservices.com, which is operated by Credit Justice Services, LLC, a Florida limited liability company. Credit Justice Services maintains a toll-free number,

United States District Court, District of Kansas
COMPLAINT
*Jamie Ryan v. Consumer Law Associates, LLC,* et al.
Case No. 10-CV-____-___-___

and Ms. Ryan called it. She spoke with a Peter Nagy briefly about her debt and debt management.

11. A recent copy of Credit Justice Service's web page regarding debt negotiations is attached as Plaintiff's Exhibit 2.

12. Mr. Nagy referred Ms. Ryan to a Jeff Schmidt at Consumer Credit Advocates, LLC, a Florida limited liability company See Plaintiff's Exhibit 3.

13. Mr. Schmidt called Ms. Ryan on November 12, 2010, regarding her debt and debt management and emailed an "enrollment package" to Ms. Ryan at her email address in Kansas the same day. The enrollment package, however, did not reference Consumer Credit Advocates, but came from DocuSign on behalf of Consumer Law Associates. The return email address was from Graig Barnwell at EFA Processing. The address for Consumer Law Associates in the agreement was at EFA Processing's address in Frisco. Ms. Ryan completed and sent the enrollment package back electronically on November 12. A correct copy of the Enrollment Package, redacted to remove Ms. Ryan's bank account information, is attached as Plaintiff's Exhibit 4.

14. The Enrollment Package includes the following provisions:

    a. "CLA would like to congratulate you on your decision to take control of your financial future and for allowing us to provide you with one of the most effective solutions to solving your debt elimination needs. . . . As I have discussed with you, the following documents are necessary to begin the debt settlement process." Plaintiff's Exhibit 4, p.1.

    b. "Client is requesting CLA to assist client in the resolution of outstanding debts ('Enrolled Debts') with the following creditors by way of negotiation of payment plan or lump sum settlement." Plaintiff's Exhibit 4, p. 6, ¶ 2.

    c. "'We' or 'Us' mens Consumer Law Associates, LLC and its administrative staff at EFA Processing."

    d. **"In the event you are sued, for a small additional fee, we will assist you in preparing an answer to such suit and will**

**negotiate with the creditor's attorney on your behalf. We will not go to court with you or file an appearance on your behalf, as the cost of doing so would be prohibitive. We will advise you on what the creditor can do, if anything, with a judgment and will work with you to revise your debt reduction plan if it's necessary to serve your interests."** Plaintiff's Exhibit 4, p. 6, ¶ 4 (emphasis original).

15. In addition to the provisions set out above, the Enrollment Package contains the following statements regarding fees:

   a. "**Fees.** As consideration for the services to be provided by CLA, Client agrees to pay all fees stated in this Agreement. Client acknowledges and understands that CLA is not being retained on an hourly basis, and that this means that CLA will not place any portion of the retainer in a trust account and will use said retainer at its sole discretion. Client also acknowledges and understands that all fees are nonrefundable and that since CLA is not being retained on an hourly basis and thus will not be recording or reporting the amount of time billable time to Client." Plaintiff's Exhibit 4, p. 7, ¶ 10.

   b. "The following fees are due and payable by Client to CLA, an initial Consultation Fee of $ 199.00. Client agrees to pay a Retainer Fee of 10%, totaling $ 1969.00 over the first 8 months that Client is enrolled with CLA. Finally, Client agrees to pay a monthly service fee of $ 85.00 per month for each month of enrollment. Client agrees to have payments debited monthly as shown on the Electronic Funds Authorization Form attached to this Agreement. CLA will begin negotiation of Client accounts when Client has funds available in their CLA Trust Account to fund anticipated settlements." Plaintiff's Exhibit 4, p. 7, ¶ 10.

   c. "**Trust Account and Fees.** Client agrees to pay an File Closing Fee of $199.00 if Client terminates this agreement before the end of the plan term. Fees paid by Client under this agreement are deemed earned when paid." Plaintiff's Exhibit 4, p. 7, ¶ 11.

   d. "**Additional Administrative Fees and Costs.** You will pay a fee of $25 for any payment returned by your bank as unpaid. You will also pay a fee of $20 for any changes you request to your debit date. Any costs incurred by the firm as a result of overnight delivery of checks or documents and copies shall also be paid by you. The fee for Overnight document delivery is $30." Plaintiff's Exhibit 4, p. 7, ¶ 13.

   e. "**Authorization for Additional Legal Fees.** As an active client of the Firm, if you decide you need additional legal services because your creditors have pursued litigation against you, you

>authorize the release of up to $65 from the funds you paid into escrow to pay additional legal services you may require. You understand that $65 will purchase a phone consultation and the 23. preparation of one document in response to a creditor suit. Fees can be higher based on the complexity of the situation and the timeline required to respond. You understand that this attorney will not represent you in litigation, but will assist you in preparing appropriate documents and for any possible appearance at trial. No attorney will be responsible for preparing an answer to any action against you unless you provide Consumer Law Associates, LLC with such documents at least 10 days." Plaintiff's Exhibit 4, p. 7, ¶ 14.

16. The letterhead included with the Client Retainer Package lists David E. Herron as the Kansas attorney affiliated with Consumer Law Associates. *See* Plaintiff's Exhibit 4.

17. The electronically-transmitted letterhead dated April 12, 2010 from Consumer Law Associates lists no counsel in Kansas as being affiliated with Consumer Law Associates. *See* Plaintiff's Exhibit 5.

18. Over the term of Ms. Ryan's relationships with Consumer Law Associates and EFA, she paid fees as follows:

| Approximate Date | Amount |
|---|---|
| December 20, 2009. | $445.12 |
| January 20, 2010. | $350.00 |
| February 20, 2010. | $350.00 |
| March 20, 2010.. | $350.00 |
| Total. | $1,495.12 |

These fees were electronically transferred out of Ms. Ryan's checking account at Bank of Kansas, in Anthony, Harper County, Kansas by EFA Processing.

19. Ms. Ryan received an e-mail from Consumer Law Associates and EFA Processing on November 14, 2009, confirming her engagement of Consumer Law Associates. She made her last payment on March 20, 2010. Therefore, Ms. Ryan's

Case 6:10-cv-01195-CM-KGG   Document 1   Filed 06/15/10   Page 10 of 13

United States District Court, District of Kansas
COMPLAINT
*Jamie Ryan v. Consumer Law Associates, LLC,* et al.
Case No. 10-CV-____-___-___

relationship with Consumer Law Associates and EFA Processing lasted no less than the 126 days that elapsed between those two dates.

20. Neither defendant is registered as a Credit Services Organization with the Office of the State Banking Commissioner.

21. Although both defendants rely upon the exemption contained in K.S.A. 60-1116(b)—*see* Plaintiff's Exhibits 6 and 7—the provision applies to neither defendant.

22. All of Ms. Ryan's communications with any defendant or the agent of any defendant occurred while she was in Sumner or Harper County, Kansas.

## Count One:  Kansas Credit Services Organization Act

23. Paragraphs 1 through 22 are hereby incorporated by reference as though fully set out.

24. Ms. Ryan is a "consumer" as that term is defined by K.S.A. 50-1117(b).

25. Ms. Ryan is also a "consumer" as that term is defined by K.S.A. 50-624(b).

26. The defendants are each "suppliers" as that term is defined by K.S.A. 50-624(j).

27. The dealings between Ms. Ryan and the defendants constitute "consumer transactions" as that term is defined by K.S.A. 50-624(c).

28. Defendants are each a "credit services organization" as that is defined by K.S.A. 50-1117(c), because each is "a person who engages in . . . the business of debt management services for a fee, compensation or gain."

29. No defendant is registered with the Office of the Kansas State Banking Commissioner as a credit services organization. A correct listing of entities that are so registered is attached as Plaintiff's Exhibit 1.

United States District Court, District of Kansas
COMPLAINT
*Jamie Ryan v. Consumer Law Associates, LLC,* et al.
Case No. 10-CV-____-___-___

30. Defendants are each in violation of the Kansas Credit Services Organization Act, because each is engaged in providing and holding themselves out as willing to provide credit services without being registered, in violation of K.S.A. 50-1118(a).

31. Defendants are in violation of K.S.A. 50-626(a) by virtue of K.S.A. 50-1132 which provides that "Any violation of this act or any rule and regulation promulgated thereunder is a deceptive act or practice under the Kansas consumer protection act. Any remedy provided by this act shall be construed to be in addition to other remedy provided by the Kansas consumer protection act."

32. The defendants' actions were ongoing, and therefore subject to a daily penalty pursuant to K.S.A. 50-636(d).

## Count Two:  Declaratory Judgment and Injunction

33. Paragraphs 1 through 32 are hereby incorporated by reference as though fully set out.

34. The plaintiff seeks a declaration that the defendants' acts violated the Kansas Credit Services Organization Act and the Kansas Consumer Protection Act pursuant to K.S.A. 50-634(a)(1), and an injunction against future violations pursuant to K.S.A. 50-634(a)(2).

35. Because the defendants' written agreement with the plaintiff is a violation of Kansas criminal law by virtue of both K.S.A. 50-1131 and K.S.A. 21-4402, the contract is void and unenforceable, and the plaintiff seeks a declaration thereof.

## Demand for Judgment

THEREFORE, plaintiffs demand judgment against the defendants as follows:

36. Against defendant Consumer Law Associates, LLC , reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $1,260,000.00.

37. Against defendant EFA Processing, L.P., reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $1,260,000.00.

38. Against defendants Consumer Law Associates, LLC and EFA Processing, L.P., jointly and severally for:

> a. Damages in an amount to be determined by the Court, but in no case less than $1,495.12 pursuant to K.S.A. 50-1133(a);
>
> b. Punitive damages pursuant to K.S.A. 50-1133(b);
>
> c. Declaratory judgment that the defendants' acts violated the Kansas Credit Services Organization Act and the Kansas Consumer Protection Act pursuant to K.S.A. 50-634(a)(1), and an injunction against future violations pursuant to K.S.A. 50-634(a)(2);
>
> d. Declaratory judgment that the defendants' written agreement with the plaintiff is a violation of Kansas criminal law by virtue of both K.S.A. 50-1131 and K.S.A. 21-4402, and that the contract is therefore void and unenforceable.
>
> e. Reasonable attorney fees pursuant to K.S.A. 50-1133(a) and K.S.A. 50-634(e); and
>
> f. The costs of this action, together with such other relief as the Court may determine the plaintiffs to be entitled at law or in equity.

**Jury Demand**

Plaintiff demands a trial by jury.

**Designation of Place of Trial**

Plaintiff designates Wichita, Kansas, as the place of trial.

United States District Court, District of Kansas
COMPLAINT
*Jamie Ryan v. Consumer Law Associates, LLC,* et al.
Case No. 10-CV-____-___-___

### Notice of Attorney Lien

Plaintiff and plaintiff's counsel hereby gives notice that plaintiff's counsel claims, pursuant to K.S.A. 7-108, an attorney lien on any and all proceeds due or paid to the plaintiff.

### Conclusion

Wherefore, the plaintiff requests that the Court grant the relief set out in this Complaint.

Respectfully submitted,

/s/ Martin J. Peck
Martin J. Peck, #16273
Security State Bank Building
107 E. Harvey, Second Floor
P.O. Box 421
Wellington, KS 67152
(620) 326-5997
Fax (620) 326-6887
peck@martinjpeck.com